IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ABIODUN SOWEMIMO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )   NO. CV 01-255-DRH |
| | ) |
| ROGER D. COWAN, EUGENE | ) |
| McADORY, GARY A KNOP, NANCY | ) |
| S. TUCKER, DONALD N. SNYDER, | ) |
| JOE HARPER, MICHAEL L. NESBITT, | ) |
| MR. ALISON, D. HASEMEYER, | ) |
| CAPTAIN STANLEY, and | ) |
| C/O WHITTENBORN, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This matter was referred for an evidentiary hearing, and that hearing was conducted on May 2, 205, in Benton, Illinois.  Plaintiff was present with appointed counsel, Michael McDonald.[1]

Plaintiff is an inmate in the Illinois Department of Corrections (DOC).  Defendants are all employed in various positions within DOC.  Plaintiff complains that his First and Eighth Amendment rights were violated at Menard Correctional Center (MCC) during 2000.  Specifically, he alleges that defendants' denial to him of placement in protective custody (PC) was deliberately indifferent to his right to be protected from hostile inmates and was retaliation for a previous lawsuit he filed.

Plaintiff was an inmate at MCC in 1997.  He was attacked by an inmate named Raymond

---

[1] Mr. McDonald presented plaintiff's case very well.  The Court takes this opportunity to thank him for the very professional service he rendered to both plaintiff and the Court.

Washington. Following that, he was transferred to Joliet and then returned to MCC in 2000. Shortly before his return to MCC, plaintiff went to trial in federal court in East St. Louis in *Sowemimo v. Hennrich*, #98-387-GBC. That trial ended with a jury verdict for defendants. This is the lawsuit for which plaintiff believes he was retaliated against. Curiously, that case and this case share no common defendants.

Shortly after the trial, plaintiff was returned to MCC. On May 11, 2000, he requested placement into PC. Plaintiff believed that Raymond Washington had friends at MCC, and he also believed that he had been labeled a snitch by inmates at MCC. While his PC request was pending, plaintiff was placed in MCC's north cell house. There, he testified, two men dressed in black entered his cell one night and tried to choke him. He was unable to positively identify his attackers. Shortly thereafter, protective custody was denied.

During July, 2000, plaintiff was in general population. Walking to lunch one day, he was pushed down a flight of stairs. He says he simply felt a hand on his back and then awoke in the prison hospital. He suffered no permanent injury from the fall. No witnesses to plaintiff's fall have been identified.

On February 6, 2001, while in the gym, plaintiff says he was again attacked by two inmates who beat on him and cut his back with some sharp object. Again, no witnesses to the attack have been identified. Plaintiff was released after treatment in the health care unit. According to defendants, plaintiff's wounds may have been self-inflicted. That theory will remain no more than surmise, however, because no evidence was offered to support such a conclusion.

Plaintiff's inmate history reveals six inmates on his enemies list during the period in question, 2000-2001: Samuel Baker, who was at Joliet; Alvin Toney, also at Joliet; Inmate Hicks,

at Stateville; Raymond Washington, at Stateville then Western; Kenyatte Merrill, at Pontiac, Stateville, and Western; and Fred Edwards, who was at MCC in the West Cell House and away from plaintiff.

Plaintiff declared no other enemies. He believes that because he has been identified as a snitch he is generally at great risk in MCC.

Defendant Cowan was warden at MCC during 2000. He has no present recollection of plaintiff. Plaintiff states that he talked with Cowan while in PC awaiting a hearing. Cowan, as warden, signed off on the review committee's denial of PC to plaintiff.

Defendant Alison was a case supervisor. Plaintiff testified that he told Alison he was in danger because his cellmate was asking questions about the 1997 attack. Alison voted "no" on plaintiff's placement into protective custody. He based his vote on defendant Nesbitt's investigation and plaintiff's inability to identify enemies.

Defendant Whittenburg was told by plaintiff about troubles he had with an inmate named Scarface. Also, Whittenburg received a call from the Deputy Director of the DOC to place plaintiff into protective custody which Whittenburg did without inquiry.

Defendant Tucker worked in Inmate Issues. She was based in Springfield, Illinois. She conducted a video conference meeting with plaintiff concerning his PC request. He related to her the incident when two men dressed in black had entered his cell to attack him.[2] He revealed no enemies to her.

---

[2] Defense witnesses testified that no black clothing was issued to either inmates or staff. This would seem to undermine plaintiff's account of the attack. At several points, defendants raised the fact that plaintiff suffers from paranoid schizophrenia, apparently attempting to suggest that he is delusional. No actual evidence made that link, however.

Defendant McAdory was the Assistant Warden of Programs at MCC. He sat on the committee that denied PC to plaintiff. He voted "no." He did vote to single-cell plaintiff because he believed plaintiff had mental health issues warranting that.

Defendant Hassemeyer was on the committee that considered PC for plaintiff. He voted "no."

To prevail on his Eighth Amendment claim, plaintiff must prove that he was exposed to prison conditions posing substantial risk of serious harm and that defendants knew of and disregarded the risk. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Defendant are not liable, even if injury occurs, as long as they do not ignore an obvious threat. *Id.* at 844. Plaintiff has not proven that he was exposed to unduly hazardous conditions within MCC. This is so even if the fact of the injures he claims are taken as true, and there is some room for debate in that area. MCC is full of unruly, incorrigible, and thoroughly dangerous men. Attacks do and will continue to occur. It is only those attacks, the likelihood of which are known to and disregarded by defendants, for which they will be held liable. Plaintiff has offered no evidence which should have alerted any of the defendants to the fact that he was peculiarly at risk of attack. He also has offered no evidence to show that any defendant disregarded his concerns. He was given a hearing on his request and was denied. That denial, even if it did eventually place him in a position to be attacked, will not support liability unless it was backed by a bad motive such as the desire to cause plaintiff's injury. Plaintiff was unable to identify attackers or enemies despite having the opportunity to do so. His identified and verified enemies were not where they could bother him. Plaintiff's general assumption that he is at greater risk because he is perceived as a snitch is insufficient to satisfy PC placement. He failed to prove that any defendant was deliberately indifferent to or displayed callous disregard for his

safety.

To prove his First Amendment retaliation claim, plaintiff must prove that his prior civil rights lawsuit was the actual motivating factor for defendants' decision to deny him protective custody. *McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979).  Plaintiff failed completely in this task.  None of the defendants in the first suit were players in this one.  There was no nexus of any kind between the first case an the present one.  To find that it was the actual motivating factor for any defendant's actions would, therefore, be impossible.

For the foregoing reasons, IT IS RECOMMENDED that verdicts and judgments be entered in favor of each defendant and against plaintiff on each claim.

**SUBMITTED:  June 23, 2005.**

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**