IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ABIODUN SOWEMIMO,**

**Plaintiff,**

**v.**

**ROGER COWAN, EUGENE McADORY, GARY A. KNOP, NANCY S. TUCKER, DONALD SNYDER, JOE HARPER, MICHAEL L. NESBITT, MR. ALISON, D. HASEMYER, CAPTAIN STANLEY, and C/O WHITTENBURG[1],**

**Defendants.**                    No. 01-CV-0255-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction and Procedural Background

On April 24, 2001, Abiodun Sowemimo, an inmate within the Illinois Department of Corrections ("IDOC"), filed suit against the Defendants alleging violations of his civil rights pursuant to **42 U.S.C. § 1983** (Doc. 1). Defendants are employed in various positions with the IDOC. Sowemimo alleges that his First and Eighth Amendment rights were violated on various occasions at the Menard

---

[1] The record contains a discrepancy as to the correct name of Defendant Whittenburg. A review of the pleadings indicates that this Defendant has been referred to also as "Wittenborn." In fact, the Final Pre-Trial Order entered by Magistrate Judge Frazier refers to this Defendant by both names (Doc. 77). The pleadings filed by Defendant use "Whittenburg." The Court assumes that this is the correct name and uses it throughout this Order.

Correctional Center ("Menard") during the years 2000 and 2001. He maintains that Defendants deliberately exposed him to inmate violence or responded to the threat of inmate violence with deliberate indifference by denying him placement in protective custody. He also claims that Defendants have retaliated against him for a prior litigation.

On September 23, 2002, the Court conducted a preliminary review of Plaintiff's complaint (Doc. 12). The Court divided Plaintiff's claims into two counts: Eighth Amendment claims and First Amendment retaliation claims.

On March 8, 2004, the Court adopted a Report and Recommendation submitted by Judge Frazier and granted Snyder and Knop's motions for summary judgment (Doc. 48). Thereafter, the Clerk of the Court issued a *default entry* as to Michael Nesbitt (Doc. 53). On April 14, 2004, Judge Frazier denied Nesbitt's motion to vacate entry of default (Doc. 58). Subsequently on May 25, 2004, the Court denied Nesbitt's objection to Judge Frazier's April 14, 2004 Order (Doc. 61).

Thereafter, this case was referred to Magistrate Judge Philip M. Frazier for an evidentiary hearing. Judge Frazier conducted the hearing on May 2, 2005. At the hearing, Plaintiff was represented by court appointed counsel, Michael McDonald. During the hearing, the parties presented evidence through exhibits and witnesses. On June 23, 2005, Judge Frazier entered a Report and Recommendation ("the Report") recommending that the Court enter verdicts and judgments in favor of each Defendant and against Plaintiff on his Eighth and First Amendment claims (Doc. 82). Judge Frazier found that Plaintiff failed to prove that any Defendant was

deliberately indifferent to or displayed callous disregard for his safety and that Plaintiff failed to prove that his prior civil rights lawsuit was the actual motivating factor for defendant's decision to deny him protective custody.

Plaintiff filed timely objections to the Report (Doc. 83). Plaintiff raises the following objections: (1) the Report erroneously found in favor of Defendants on the basis that they had no knowledge of any special threat to Plaintiff; and (2) the Report erroneously failed to enter judgment against Defendant Michael Nesbitt. Defendants filed a response to Plaintiff's objections (Doc. 84). After conducting de novo review, the Court **ADOPTS** Magistrate Judge Frazier's Report in its entirety.

## II. Standard of Review

A federal district court is authorized to refer a matter to a magistrate judge to conduct an evidentiary hearing. **See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)**. Following the hearing, the magistrate judge cannot enter a final judgment, but must submit to the district court proposed findings of fact and recommendations for disposition to which either party may file written objections within 10 days. **See *Id*.** The district court is required to conduct a de novo review of those portions of the magistrate judge's report and recommendations to which specific written objection have been filed. **Local Rule 73.1(b)**.

However, this de novo review is not the same as a de novo hearing. The district court is not required to conduct another hearing to review the magistrate judge's findings and credibility determinations. ***United States v. Raddatz*, 447**

**U.S. 667, 675 (1980);** *Goffman v. Gross*, **59 F.3d 668, 671 (7th Cir. 1995)**. Rather, the district court has discretion to "accept, reject or modify, in whole or part, the findings or recommendations made by the magistrate." **28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); Local Rule 73.1(b)**. If the district court finds a problem, it may take additional evidence, call witnesses, or remand to the magistrate judge for further development. *Raddatz*, **447 U.S. at 675**. If upon reviewing the record, the district court is satisfied with the magistrate judge's findings and recommendations, it may in its discretion treat those findings as its own. *Id*.

### III.  Facts[2]

In 1997, Plaintiff was incarcerated in Menard. On September 23, 1997, Plaintiff was attacked by, Raymond Washington, an inmate also housed at Menard Following that attack, Plaintiff was transferred to Joliet Correctional Center. In the meantime, Plaintiff filed a civil rights suit alleging that Mendard officials had been deliberately indifferent to his safety. *See Sowemino v. Hennrich*, **98-387-GBC**. On March 30, 2000, a jury returned a verdict for the Defendants and against Plaintiff. *Id*. This is the lawsuit that Plaintiff believes he was retaliated against. None of the named Defendants in the case at bar were named Defendants in his prior lawsuit.

Sometime after the trial, Plaintiff was returned to Menard. On May 11, 2000, Plaintiff requested placement into protective custody. Plaintiff believed that

---

[2]Since neither party objected to the Report's recitation of the facts, the Court adopts the facts as set forth in the Report and repeats them for ease in reference.

Raymond Washington had friends at Menard and that he had been labeled as a snitch by the inmates at Menard.

While Plaintiff's request for protective custody was pending, Plaintiff was placed in Menard's North Cell House. Plaintiff testified that two unidentified men dressed in black came into his cell at night and tried to choke him. Plaintiff could not identify his attackers. Shortly after this attack, Plaintiff's request for protective custody was denied.

In July 2000, Plaintiff was in general population. While walking to lunch one day, an unknown inmate pushed Plaintiff down a flight of stairs. The fall down the stairs caused Plaintiff to lose consciousness. He testified that he simply felt a hand on his back and then he awoke in the prison hospital. He suffered no permanent injury from the fall. No witnesses to Plaintiff's fall have been identified.

Plaintiff also testified that on February 6, 2001, while he was in the gym, he was attacked by two inmates who beat on him and cut his back with some sharp object. No witnesses to this attack have been identified. Plaintiff received treatment for his wounds in the heath care unit.

Plaintiff's inmate history reveals six inmates on his enemies list during the relevant time: (1) Samuel Baker, who was at Joliet; (2) Alvin Toney, who was at Joliet; (3) Inmate Hicks, who was at Stateville; (4) Raymond Washington, who was at Stateville then Western; (5) Kenyatte Merrill, who was at Pontiac, Stateville, and Western; and (6) Fred Edwards, who was at Menard in the West Cell House away from Plaintiff. Plaintiff did not declare any other enemies. He believes that since he

has been identified as a snitch he is generally at great risk in Menard.

Defendant Cowan was Warden at Menard during 2000. Cowan does not remember Plaintiff. Plaintiff testified that he talked with Cowan while he was in protective custody awaiting a hearing. Cowan signed off on the review committee's denial of protective custody to Plaintiff.

Defendant Alison was a case supervisor. Plaintiff attested that he told Alison that he was in danger because his cellmate was asking questions about the 1997 attack. Alison voted not to allow Plaintiff placement in protective custody. Alison based his decision on Defendant Nesbitt's investigation and Plaintiff's inability to identify his enemies.

Plaintiff told Defendant Whittenburg about the troubles he had with an inmate named Scarface. Further, the Deputy Director of the IDOC called Whittenburg and told him to place Plaintiff in protective custody. Whittenburg put Plaintiff in protective custody.

Defendant Tucker works in Inmate Issues. She was based in Springfield, Illinois. She conducted a video conference meeting with Plaintiff concerning his protective custody request. Plaintiff told her about the incident with the two men dressed in black entering his cell. Plaintiff did not reveal any enemies to her.

Defendant McAdory was the Assistant Warden of Programs at Menard. He was on the committee that denied protective custody for Plaintiff. He voted to place Plaintiff in a single cell because he felt that Plaintiff had mental health issues

which would warrant such placement.

Defendant Hassemeyer was also on the committee that denied protective custody for Plaintiff. He too voted no.

### IV.  Analysis

First, Plaintiff objects to the Report arguing that Judge Frazier erred when he found that Plaintiff has offered no evidence which should have alerted any of the Defendants to the fact that he was peculiarly at risk of attack. Plaintiff contends that he did supply evidence that he was a greater risk of harm at Menard than the general population. Specifically, Plaintiff contends that he was a greater risk because the other inmates considered him to be a snitch. Plaintiff further maintains that the danger can be seen because he was attacked shortly after he was released from Administrative Custody.

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. ***Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)**. The Supreme Court in *Farmer* considered the correct definition of "deliberate indifference." ***Id.* at 835-40, 114 S.Ct. 1970**. After comparing deliberate indifference with common-law tort recklessness, the Court expressly rejected an objective test for deliberate indifference. ***Id.* at 837, 114 S.Ct. 1970**. Because a subjective recklessness test for deliberate indifference "isolates those who *inflict* punishment," the Court concluded that it is the appropriate requirement in Eighth Amendment suits against prison

officials. ***Id.* at 839, 114 S.Ct. 1970 (emphasis added)**. "[A] prison official cannot be found liable under the Eighth Amendment … unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ***Id.* at 837, 114 S.Ct. 1970**.

In cases alleging a failure to protect, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a *specific* threat to *his* safety." ***Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996) (emphasis added)**. It is true that courts may "infer 'deliberate indifference to a known hazard' where prison officials fail to protect an inmate who belongs to an identifiable group of prisoners for whom the risk of assault is a serious problem of substantial dimensions, including prisoners targeted by gangs." ***Lewis v. Richards,* 107 F.3d 549, 553 (7th Cir. 1997); *see also James v. Milwaukee County,* 956 F.2d 696, 700 (7th Cir. 1992) (stating "deliberate indifference" means "*recklessness* in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred")**.

In this case, however, Plaintiff has offered no evidence that any of the Defendants were aware of a specific threat to his safety. Plaintiff has not demonstrated that Defendants knew that he was in danger and consciously disregarded that risk. Plaintiff admitted that he was not aware of who attacked him.

As it stands, the record supports only one conclusion, that Plaintiff was the unfortunate victim of inmate-on-inmate violence which is all to prevalent in jails and prisons nationwide.  **See McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir.1991)( It is common knowledge that "prisoners are dangerous" and "some level of brutality and sexual aggression among them is inevitable no matter what the guards do.")**.

Here, Plaintiff attempts to establish a causal connection based on the fact that he was a known snitch and the attacks against him.  The Court finds that Plaintiff has not proven this link.  **See Haley v. Gross, 86 F.3d 636, 643 FN33 (7th Cir. 1996)( "[T]here must be some link between the risk of which the official was aware and the harm that actually occurred-as it would be unfair to hold officials liable for risks they could not have anticipated simply because they ignored other unrelated risks-prison officials need not be specifically aware of the precise risk that unfolds")**.  Plaintiff did not produce material evidence to establish that Defendants knew, let alone, intentionally disregarded any substantial risk of harm to Plaintiff's safety.  Furthermore, the evidence does not reveal that any Defendants had animus towards him that would effect their decision not to place him in protective custody.

Next, Plaintiff objects to the Report arguing that Judge Frazier erred when he failed to recommended that final judgment be entered against Defendant Nesbitt.  Specifically, Plaintiff argues that since Default Judgment has been entered

against Nesbitt in this action, Judge Frazier erred in recommending that judgment be entered in favor of all Defendants. The Court rejects this objection.

A review of the record indicates that Default Judgment has not been entered in favor of Defendant Nesbitt. The record reveals that only an *entry* of Default has been entered against Defendant Nesbitt.[3] Furthermore, Plaintiff has not moved for Default Judgment as required by **FEDERAL RULE OF CIVIL PROCEDURE 55**.

**FEDERAL RULE OF CIVIL PROCEDURE 55(b)(2)** is applicable to the situation at bar, since the amount of plaintiff's claim against defendant cannot be determined from the face of the complaint. Accordingly, it is incumbent upon plaintiff to move for entry of default judgment. **Fed.R.Civ.P. 55(B)(2)**. With that said, even if plaintiff were to file the proper motion, the Court finds, on this record, pursuant to **28 U.S.C. § 1915(b)(2)(B),** that Plaintiff is not entitled to relief against Nesbitt as Plaintiff has failed to produce any evidence to support his claims against any of the Defendants, let alone Defendant Nesbitt.[4] However, the Report is silent on the issue of Nesbitt in particular and so it cannot be determined if the matter was even considered in specific by Judge Frazier. This undersigned judge suspects not. One can further speculate that the evidentiary hearing was a busy affair and since

---

[3] The Court notes that Plaintiff's statement that the Final Pre-trial Order states "that a Default Judgment had been entered against Defendant Michael Nesbitt" is correct. However, a review of the record indicates that the Final Pretrial Order is wrong, as only an *entry* of Default was entered against Defendant Nesbitt.

[4] **28 U.S.C. § 1915(b)(2)(ii)** provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that– fails to state a claim on which relief may be granted;"

Plaintiff's counsel has the appreciation of the Court for taking this matter on in the first place, there will not be much time spent second guessing how things could have been done differently in this regard. Suffice it to say, the matter of how to deal with Defendant Nesbitt obviously slipped everyone's mind and so the Court will remand that specific issue to Judge Frazier for handling. For ease of potential appellate review the Court will withhold entering judgment until that matter is resolved.

### V. Conclusion

Accordingly, the Court **REJECTS** Plaintiff's objections to the Report and **ADOPTS** the Report as to all of the Defendants except for Defendant Nesbitt. The case against Defendant Nesbitt is remanded to Magistrate Judge Frazier for further proceedings as are necessary.

**IT IS SO ORDERED.**

Signed this 24th day of August, 2005.

/s/   David RHerndon
**United States District Judge**